**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION**

| | | |
|---|---|---|
| **NETTUNO & ASSOCIATES, LLC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CASE NO. _____** |
| | ) | |
| **DENISE ZAPATA,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## VERIFIED COMPLAINT

Plaintiff Nettuno & Associates, LLC ("Nettuno" or "Plaintiff") brings the following Complaint against Defendant Denise Zapata ("Defendant") and states as follows:

## PRELIMINARY STATEMENT

This is an action against Defendant for her multiple and intentional breaches of the "INDEPENDENT CONTRACTOR AGREEMENT OF NETTUNO & ASSOCIATES, INC." (hereinafter referred to as the "Agreement"). (The Agreement is attached as <u>Exhibit A</u>). Nettuno respectfully requests that this Court enjoin Defendant, as she contractually agreed, from soliciting certain customers of Nettuno and misappropriating Nettuno's Trade Secrets and Confidential Information.

## PARTIES

1.      Plaintiff Nettuno & Associates, LLC is a Georgia limited liability company with its principal place of business in Milton, Georgia. Nettuno is in the business of providing marketing and other business support services to registered persons associated with broker-dealers and registered investment advisor representatives who provide investment and financial services to the public. In 2019, Nettuno executed articles of conversion with the Georgia Secretary of State to convert the company from a domestic profit corporation to a domestic limited liability company.

2.      Defendant Denise Zapata is an individual over the age of eighteen (18) years who is a resident of the State of California. Defendant is a former independent contractor of Nettuno who voluntarily terminated her independent contractor relationship with Nettuno on November 4, 2021.

## JURISDICTION AND VENUE

3.      This Court has personal jurisdiction over Defendant because Defendant consented to jurisdiction in this Court for purposes of enforcing the post-termination provisions of the Agreement.  Ex. A, ¶ 12(b).  This Court also has personal jurisdiction over Defendant because the Defendant has sufficient minimum contacts with the State of Georgia to give rise to personal jurisdiction.

4.     This Court has jurisdiction over the subject matter of Nettuno's claims under 28 U.S.C. § 1332(a), as complete diversity exists amongst the parties and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.  If injunctive relief is not granted, Nettuno will suffer well in excess of $75,000.00 in damages due to Defendant's actions.

5.     Venue is proper in this District and Division as Defendant agreed by signing the Agreement that any dispute or controversy arising from the Agreement could be brought in this District and Division.  Ex. A, ¶ 12(b).

## FACTUAL ALLEGATIONS

### A.     Nettuno's Business

6.     Nettuno is in the business of providing marketing and other business support services to registered persons associated with broker-dealers and registered investment advisor representatives who provide investment and financial services to the public. Over the years, Nettuno has expended substantial time, resources and effort in developing relationships with various regional and local labor organizations. From these organizations, Nettuno has developed a niche in the industry and a pool of valuable clients and prospects, as well as a unique and irreplaceable knowledge, experience and a basis for ongoing customer referrals and business relationships.

7.     As a result of the relationships described above, Nettuno has developed a unique market and client base for its services and products and has created substantial goodwill with these individuals and organizations. Moreover, Nettuno has created and enhanced certain trade secrets and confidential information, which constitute valuable proprietary assets that are essential to its business.

8.     Additionally, Nettuno has developed a valuable, proprietary business strategy that involves specially crafted seminars and other programs and materials developed for marketing to members of labor organizations with which Nettuno has relationships.

9.     In pursuit of its business, Nettuno utilizes the services of a number of individuals who currently market Nettuno's products as independent contractors to union members in some twenty-six (26) states. In order to benefit from Nettuno's products and business strategies, such individuals must be or become "Registered Representatives" who hold appropriate securities licenses and certifications, including certain licenses with the Financial Industry Regulatory Authority ("FINRA").

10.     In order to pursue its business through these independent contractors, Nettuno must disclose to them certain highly valuable and otherwise unavailable

trade secrets and confidential information and resources. In addition, Nettuno provides these independent contractors with access to its relationships with regional and local labor organizations. As a result of Nettuno's relationships, the independent contractors have access to thousands of potential customers and customized materials.

11. In order to protect itself and the value of its business, Nettuno requires each independent contractor to enter into the Agreement, which contains various provisions designed to protect Nettuno's customer relationships as well as its confidential and trade secret information from disclosure, misuse and misappropriation.

12. The independent contractors benefit from the Agreement because they obtain training, utilize the highly valuable confidential and trade secret information of Nettuno, and also benefit from the numerous client leads generated by Nettuno's unique and proprietary marketing system and strategy.

13. The trade secrets and confidential information created and constantly enhanced by Nettuno constitute valuable proprietary assets that are essential to Nettuno's business.

14. Included within Nettuno's trade secrets are valuable customer and prospect lists, with detailed customer and prospect information, all of which are

tracked through a database maintained by Nettuno. Also included within Nettuno's trade secrets and confidential information are Nettuno's methods for attracting and keeping clients from within the union member customer base. Nettuno developed its customer and client data through a significant investment of time, labor, and capital. Information from the database and other trade secrets and confidential information are disclosed in strict confidence under the Agreement.

**B.      Defendant's Independent Contractor Agreement**

15.     On or about January 13, 2014, Defendant executed the Agreement with Nettuno.  *See* Ex. A.

16.     Paragraph 9 of the Agreement defines the "Contractor's Obligations During and After the Term [of the Agreement]."  Ex. A, ¶ 9. These obligations include, among other covenants, a non-solicitation agreement and a non-disclosure agreement. *See* Ex. A, ¶ 9(a)-(j).

17.     The Agreement draws a clear and important distinction between "Contractor Clients" and "Company Clients." For example, upon termination, the Agreement allows the independent contractor, in this case Defendant, to continue to act as a registered representative for all "Contractor Clients," but forbids the independent contractor from soliciting or diverting or attempting to solicit or divert the business of certain "Company Clients."

18.     "Company Clients" are defined by the Agreement as:

Clients that are, at the time such Person first becomes an actual or actively sought prospective Client, either: (i) a current or retired employee of any employer that is or has been subject to any current or past collective bargaining or similar labor agreement with any Organization, or whose employees are, or have been, represented by such Organization for collective bargaining purposes, or a spouse of any such current or retired employee, (ii) an Organization, (iii) an Organization Affiliate or a spouse of any such Organization Affiliate, or (iv) a corporation, limited liability company, partnership, trust or other entity controlled by, or established or operated for the benefit of, any Person referred to in clauses (i) through (iii) above. Company Clients shall not include any Client with whom Contractor had an actual Registered Representative relationship prior to the time Contractor became a Registered Representative under the supervision of the Company Principals and/or Supervisors as the OSJ.

Ex. A, ¶ 1(f).

19.     Meanwhile, "Contractor Clients," who may be solicited, are defined as "all Clients that are not Company Clients."  Ex. A, ¶ 1(p).

20.     The non-solicitation agreement itself, provides as follows:

Contractor agrees that during the Term and for a period of two (2) years following any Termination or purported Termination, Contractor shall not, either directly or indirectly, on Contractor's own behalf or on behalf of others: (i) solicit or divert to or on behalf of any Competing Business; or (ii) attempt to solicit or divert to or on behalf of any Competing Business, any "business" (as defined below) from any Company Client (including both actual and actively sought prospective Company Clients) within the Territory with whom Contractor has had Material Contact (as defined below) (at any

7

time during the Look-Back Period (as defined below)) while acting as a Registered Representative under the supervision of the Company Principals and/or Supervisors. …

Ex. A, ¶ 9(e).[1]

21.    For purposes of this non-solicitation provision in the Agreement, "Territory" is defined in Exhibit 1 of the Agreement as a "15 mile radius around Riverside, CA" and the Union Local IBEW Local 47. Ex. A, ¶ 1(kk), (mm), Ex. 1.

22.    The Agreement further contains the following non-use and non-disclosure agreement:

> Contractor hereby agrees never to use or disclose any Trade Secrets of the Company during the term and for so long afterwards as the pertinent information or data shall remain a Trade Secret, whether or not such Trade Secrets are in written or tangible form, except as may be expressly authorized by the Company during the Term in the course of Contractor's performance of the Contract Services, and in a manner consistent with Contractor's duty of loyalty and absolute good faith to the Company. Contractor acknowledges and agrees that the NettWorth System constitutes a single, integrated proprietary system that is essential to preserving the Company's competitive advantage and value, and therefore all material aspects of the NettWorth System comprise Trade Secrets subject to the foregoing non-use and non-disclosure agreement. **Contractor, further, agrees never to use or disclose any Confidential Information of the Company during the Term and for so long afterwards as the pertinent information or data shall remain Confidential Information**, but in no event

---

[1] The terms "business," "Material Contact," and "Look Back Period" are each defined separately in Paragraph 9(e) of the Agreement.

for longer than two (2) years following my Termination, whether or not such Confidential Information is in written or tangible form, except as expressly authorized by the Company during the Term in the course of Contractor's performance of the Contract Services, and in a manner consistent with the Contractor's duty of loyalty and absolute good faith to the Company. …

Ex. A, ¶ 9(c) (emphasis added).

23.    To ensure that Nettuno's trade secrets and confidential information are protected, the Agreement requires the Contractor to take the following steps following any termination:

- Return all memoranda, notes, records, drawings, manuals, marketing materials, correspondence or other documents or materials pertaining to  Nettuno  or  the  independent  contractor's performance of the "Contract Services" within three (3) days of any termination.  Ex. A, ¶ 9(d).

- Deliver a complete and detailed list of all records and materials returned to Nettuno.  Ex. A, ¶ 9(d).

- Certify to Nettuno in writing and under oath that all records and materials within Defendant's possession have been returned to Nettuno.  Ex. A ¶ 9(d).

- Return all computers provided to Defendant by Nettuno.  Ex. A, ¶ 9(d).

- Remove all computer programs and information from Defendant's computer.  Ex. A, ¶ 9(d).

24.    In order to preserve and effectively transition Nettuno's customer relationships, the Agreement requires the independent contractor, upon any

termination, to effect a prompt and efficient transition of all relationships with "Company Clients" and "preserve the Company's continuing relationships with all Organizations within the Territory." Ex. A, ¶ 8(b).

25.     Upon termination, the Agreement requires the independent contractor to participate in a post-termination interview to confirm the independent contractor's obligations under the Agreement, including but not limited to the non-solicitation agreement, the independent contractor's obligation to assist Nettuno with the transition, and the non-disclosure agreement. Ex. A, ¶ 9(h).

26.     Also upon termination, the Agreement allows for an independent contractor to receive a limited waiver of the non-solicitation agreement contained in Paragraph 9(e) if certain conditions are met. Among other requirements, Paragraph 10 of the Agreement provides that the Contractor can continue her relationship with Company Clients with whom the Contractor has an actual registered representative relationship if the Contractor has served as a Contractor for Nettuno for five (5) years; Contractor has not otherwise violated the terms of the Agreement; and Contractor pays to Nettuno an amount equal to two-times the trailing 12-month gross commissions generated by those Company Clients.

27.     The Agreement provides that Nettuno is entitled to injunctive relief for any breach of the provisions of Paragraph 9:

> Contractor acknowledges that irreparable loss and injury would result to the Company upon the breach of any of the undertakings and covenants contained in Paragraph 9 of this Agreement and that the damages arising out of such breach would be difficult to ascertain. Contractor therefore agrees that, in addition to all of the other remedies provided at law or in equity, the Company may, without posting bond, petition and obtain from a court of law or equity both temporary and permanent injunctive relief to prevent a breach, or a further or continuing breach, by Contractor of any undertaking or covenant contained in Paragraph 9 of this Agreement.

Ex. A, ¶ 11(b).

28.    Finally, the Agreement provides that the scope and enforceability of the Contractor's obligations under Paragraph 9 of the Agreement (*e.g.,* non-solicitation agreement and non-disclosure agreement) "shall be governed by the laws of the State of California." Ex. A, ¶ 12(b).

## C.    Defendant's Resignation from Nettuno

29.    On November 4, 2021, Defendant abruptly resigned from Nettuno.

30.    In so doing, Defendant submitted a letter of resignation wherein she indicated she intended to take and solicit all clients she previously serviced, including certain Company Clients, which she had expressly and previously agreed would remain clients of Nettuno upon her termination from the company.

11

31.    In addition, with her abrupt resignation, Defendant breached various termination provisions in her Agreement with Nettuno that were intended to allow an orderly transition without undue disruption to Nettuno.

32.    Specifically, Defendant did not ensure that Nettuno's trade secrets and confidential information would remain protected and, as such, did not:

- •    Return all memoranda, notes, records, drawings, manuals, marketing materials, correspondence or other documents or materials pertaining to Nettuno or the independent contractor's performance of the "Contract Services" within three (3) days of any termination.  Ex. A, ¶ 9(d).

- •    Deliver a complete and detailed list of all records and materials returned to Nettuno.  Ex. A, ¶ 9(d).

- •    Certify to Nettuno in writing and under oath that all records and materials within Defendant's possession have been returned to Nettuno.  Ex. A, ¶ 9(d).

- •    Return all computers provided to Defendant by Nettuno.  Ex. A, ¶ 9(d).

- •    Remove all computer programs and information from Defendant's computer.  Ex. A, ¶ 9(d).

33.    In addition, with her abrupt resignation, Defendant did not to participate in a post-termination interview to confirm Defendant's obligations under the Agreement, including but not limited to her obligations under the non-solicitation agreement and the non-disclosure agreement.  Ex. A, ¶ 9(h).

34.     Defendant also effectively waived her rights under the Limited Release in the Agreement, which provided that Defendant could continue her relationship with Company Clients if, among other requirements, she did not violate the terms of the Agreement and she paid Nettuno an amount equal to two-times the trailing 12-month gross commissions generated by those Company Clients.

35.     On November 5, 2021, counsel for Nettuno advised Defendant via letter of Defendant's ongoing obligations under the Agreement, including payment of the amounts owed to Nettuno as consideration for Defendant retaining the Company Clients.

36.     Upon information and belief, since terminating the Agreement with Nettuno, Defendant has solicited and/or attempted to solicit "Company Clients" in violation of the Agreement.  Such solicitations have and will cause irreparable harm to Nettuno which cannot be undone by monetary damages.

37.     Upon information and belief, Defendant has also used Nettuno's documents and misappropriated Nettuno's trade secrets and confidential information in direct violation of the Agreement.  In connection with her ongoing solicitations of Nettuno's "Company Clients," Defendant has used Nettuno's

confidential and proprietary customer and prospect information, which Nettuno developed through a significant investment of time, labor, and capital.

38.     Although Nettuno has made a demand on Defendant to cease and desist her actions in violation of the Agreement, Defendant has continued to solicit "Company Clients" and utilize the trade secrets and other confidential information obtained by Defendant during her tenure with Nettuno.

39.     Due to Defendant's repeated and intentional violations of the Agreement and the limited waiver, which was expressly conditioned on Defendant's compliance with the Agreement, the limited waiver is void and unenforceable.

40.     Without the immediate assistance of the Court, Nettuno is in severe danger of being immediately and irreparably harmed by the activities of Defendant and those acting in concert with her.  Nettuno has no adequate remedy at law.

## COUNT ONE - BREACH OF CONTRACT

41.     Nettuno adopts and incorporates by reference its allegations contained in Paragraphs 1 through 40 as if fully set forth herein.

42.     Defendant's above-described conduct constitutes a breach of contract. Defendant directly breached the Agreement by soliciting "Company Client[s]" of Nettuno not included in the limited waiver within two (2) years of the termination

14

of his Agreement with Nettuno. Defendant's actions violate Paragraph 9(e) of the Agreement and the limited waiver provided by Nettuno, which prohibit Defendant from soliciting or diverting or attempting to solicit or divert a "Company Client" that is not included in the limited waiver.

43.     Defendant has also directly breached Paragraphs 9(c) and 9(d) of the Agreement by retaining and misappropriating documents, data, and property belonging to Nettuno and considered by Nettuno to be trade secrets and confidential.

44.     Defendant has violated Paragraph 8(b) by failing to assist in the preservation and transition of Nettuno's customer relationships to her replacement with Nettuno.

45.     Nettuno has suffered extensive damages as a result of Defendant's multiple and intentional breaches of the Agreement.

## COUNT TWO - TORTIOUS INTERFERENCE WITH BUSINESS OR CONTRACTUAL RELATIONSHIPS

46.     Nettuno adopts and incorporates each of its responses to Paragraphs 1 through 45 as if fully set forth herein.

47.     Nettuno avers that Defendant's above-described conduct constitutes tortious interference with business or contractual relationships.

48.     Nettuno has invested significant time and resources establishing business and contractual relationships with regional and local labor organizations and their respective members, including Union Local IBEW Local 47.

49.     Defendant was fully aware of these relationships due to her relationship as an independent contractor with Nettuno for over six (6) years. Defendant even acknowledged the importance of these relationships by executing the Agreement, the Termination Agreement, the Termination Agreement checklist, and the Independent Platform Agreement.

50.     But for Defendant's interference with Nettuno's business and contractual relationships, such as Union Local IBEW Local 47, Nettuno reasonably expected to continue and further develop those relationships.

51.     Defendant intentionally interfered with Nettuno's business and contractual relationships by soliciting Nettuno's potential and prospective customers.

52.     Defendant's interference with Nettuno's business and contractual relationships is malicious and has resulted in irreparable harm to Nettuno.

## COUNT THREE – VIOLATION OF THE DEFEND TRADE SECRETS ACT, 18 U.S.C. § 1836, *ET SEQ.*

53.     Nettuno adopts and incorporates each of its responses to Paragraphs 1 through 52 as if fully set forth herein.

16

54.     Nettuno's above-described confidential information, including its confidential customer contact, financial, and account information (including their names, addresses, and phone numbers) are trade secrets of Nettuno subject to protection under the DTSA, 18 U.S.C. § 1836 *et seq.*

55.     This information derives independent economic value by not being accessible, through proper means to competitors, which can profit from its use or disclosure. The identities of (and other information concerning) Nettuno's clients are not readily available to the public or to Nettuno's competitors. Nettuno has spent significant sums, in terms of both financial and human resources, to develop and maintain this information, which is of great value to any competitor.

56.     Nettuno derives significant economic benefit from maintaining the secrecy and confidentiality of the above-described trade secrets.

57.     Nettuno takes reasonable measures to maintain its trade secrets, including its customer contact, financial, and account information, including by password protecting its computer systems on which it stores its confidential information, limiting access to the information to employees who need to know the information in order to perform their jobs, disseminating and enforcing policies addressing the treatment of its confidential information, requiring all Independent Contractors to sign a contract like Defendant's Agreement that contains restrictive

covenants designed to protect Nettuno's confidential information, and requiring employees to return all confidential information upon their termination.

58.     The foregoing conduct of Defendant constitutes a misappropriation and misuse of Nettuno's confidential, trade secret information in violation of the DTSA because the Defendants have used and/or disclosed Nettuno's client information without Nettuno's consent and despite the fact that Defendant's knowledge of the information was acquired by her under circumstances giving rise to a duty to maintain the information's secrecy and limit its use. Defendant owed that duty to Nettuno as an agent, employee, and representative of Nettuno.

59.     Defendant has used Nettuno's trade secret information to solicit and approach Nettuno's "Company Clients."

60.     Defendant's conduct constitutes a willful and malicious misappropriation of Nettuno's trade secrets.

61.     As a consequence of the foregoing, Nettuno has suffered and will continue to suffer damages, loss of its competitive position, and irreparable harm.

## COUNT FOUR - VIOLATION OF THE GEORGIA TRADE SECRETS ACT, O.C.G.A. § 10-1-760 *ET SEQ.*

62.     Nettuno adopts and incorporates each of its responses to Paragraphs 1 through 61 as if fully set forth herein.

63.     Nettuno avers that Defendant's above-described conduct constitutes a violation of the Georgia Trade Secrets Act, O.C.G.A. § 10-1-760 *et seq.*

64.     Defendant has improperly retained and misappropriated documents, data, and property of Nettuno that were provided to Defendant in confidence pursuant to the conditions and obligations set forth in the Agreement. The Agreement specifically provides that the information and documents disclosed to Defendant by Nettuno are considered Trade Secrets and Defendant agreed to return all such items and not too disclose such Trade Secrets following his termination.

65.     As a result of Defendant's misappropriations, Nettuno has and will continue to suffer irreparable harm unless Defendant is enjoined.

## COUNT FIVE - INJUNCTIVE RELIEF

66.     Nettuno adopts and incorporates each of its responses to Paragraphs 1 through 65 as if fully set forth herein.

67.     Pursuant to Rule 65 of the Federal Rules of Civil Procedure, Nettuno seeks a temporary restraining order, preliminary injunction, and permanent injunction prohibiting Defendant from continuing to breach the Agreement.

68.     Defendant contractually agreed that she would not, for a period of two (2) years,

> [N]ot, either directly or indirectly, on Contractor's own behalf or on behalf of others: (i) solicit or divert to or on behalf of any

Competing Business; or (ii) attempt to solicit or divert to or on behalf of any Competing Business, any "business" (as defined below) from any Company Client (including both actual and actively sought prospective Company Clients) within the Territory with whom Contractor has had Material Contact (as defined below) (at any time during the Look-Back Period (as defined below)) while acting as a Registered Representative under the supervision of the Company Principals and/or Supervisors. …

69.    During the term of the Agreement, Defendant was provided with confidential and proprietary Nettuno information and documents and Defendant contractually agreed that she would return or destroy all Nettuno information within her possession within three (3) days following her Termination.

70.    Defendant was also privy to Nettuno's Trade Secrets and contractually agreed that she would not use any Trade Secrets, as defined in Paragraph 1(ll) of the Agreement, following her termination.

71.    Defendant agreed to assist in preserving and transitioning Nettuno's customer relationships under Paragraph 8(b) of the Agreement.

72.    Furthermore, Defendant contractually agreed that "irreparable loss and injury would result to Company upon the breach of any of the undertakings and covenants contained in Paragraph 9 of th[e] Agreement" and further agreed that "the Company may, without posting bond, petition and obtain from a court of law or equity both temporary and permanent injunctive relief to prevent a breach,

or a further or continuing breach, by Contractor or any undertaking or covenant contained in Paragraph 9 of th[e] Agreement."

73.   In clear violation of the Agreement, Defendant has solicited 'Company Clients" not included in the limited waiver granted by Nettuno, improperly retained and misappropriated Nettuno's Trade Secrets and confidential information, and failed to assist in preserving and transitioning customer relationships.   Accordingly, based upon the terms of the Agreement, and Defendant's repeated and intentional violations of the Agreement, the threat of further injury to Nettuno clearly outweighs any possible harm to Defendant which might accrue by the entry of a temporary injunction prohibiting Defendant from continuing to breach the Agreement.

74.   Nettuno has a substantial likelihood of success on the merits of this cause, it has an inadequate remedy at law for the breaches described herein, and the entry of a temporary injunction and/or a preliminary injunction will not conflict with the public interests.

## **<u>PRAYER FOR RELIEF</u>**

WHEREFORE, premises considered, Plaintiff Nettuno & Associates, LLC respectfully requests that this Court enter the following relief against Defendant Denise Zapata:

1.      That process issue and be served on Defendant;

2.      That the Court enter judgment on Count One in favor of Nettuno and against Defendant and award Nettuno all compensatory damages and other available relief for Defendant's repeated breaches of the Agreement;

3.      That the Court enter judgment on Count Two in favor of Nettuno and against Defendant and award Nettuno all compensatory damages, punitive damages, and other available relief for Defendant's tortious interference with Nettuno's business and contractual relationships;

4.      That the Court enter judgment on Count Three and Four in favor of Nettuno and against Defendant and award Nettuno all damages and other relief available under the Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq*. and Georgia Trade Secrets Act, O.C.G.A. § 10-1-760 *et seq.,* for Defendant's violation thereof;

5.      Award Nettuno all attorneys' fees and costs incurred in enforcing the Agreement pursuant to Paragraph 12(h) of the Agreement;

6.      Enter an Order temporarily and permanently enjoining and restraining Defendant and anyone acting at her direction or in concert with Defendant from:

> (a)      soliciting or diverting or attempting to solicit or divert the business of any "Company Client", as that term is defined by the Agreement, that is not included in the

limited waiver of the non-solicitation agreement granted by Nettuno upon Defendant's termination;

(b)     using or disclosing any Trade Secrets of Nettuno, as that term is defined in the Agreement; and

(c)     using or disclosing any Confidential Information of Nettuno, as that term is defined in the Agreement.

7.     Enter an Order requiring Defendant to promptly return all Nettuno documents or property within her possession;

8.     Enter an Order requiring Defendant and anyone acting at her direction or in concert with Defendant to assist Nettuno in effecting a prompt and efficient transition of the business relationships for any "Company Clients" not included in the limited waiver; and

9.     Declare that the limited waiver is void and unenforceable and that Defendant is no longer entitled to solicit those customers included in the limited waiver due to Defendant's repeated breaches of the Agreement.

Respectfully submitted this 30th day of November, 2021.

/s/ William C. Collins, Jr.
William C. Collins, Jr.
Georgia Bar No. 178847
wcollins@burr.com
*Attorney for Plaintiff*
*Nettuno & Associates, LLC*

**BURR & FORMAN LLP**
171 17th Street, NW, Suite 1100
Atlanta, Georgia 30363
Telephone: (404) 815-3000
Facsimile: (404) 817-3244

# **VERIFICATION**

I, Kenneth Nettuno, the President of Business Operations for Nettuno & Associates, LLC, verify that the facts set forth in the foregoing *Verified Complaint For Injunctive Relief and Damages* are true and accurate.

_____

Kenneth Nettuno

STATE OF GEORGIA          )

COUNTY OF FORSYTH        )

I, _LeAnn Denise Owen_, a Notary Public in and for said County in said State, hereby certify that **Kenneth Nettuno**, the **President of Business Operations** of Nettuno & Associates, Inc., is signed to the foregoing Verified Complaint, and who is known to me, acknowledged before me on this day that, being informed of the contents of such instrument, he, as such principal and with full authority, executed the same voluntarily for and as the act of said corporation.

Given under my hand and seal, this 30 day of November, 2021.

_____

NOTARY PUBLIC

[SEAL]

My Commission Expires: 03/18/2022